IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RANDOLPH WALLACE BOULDEN,

                        Plaintiff,

   v.

SCOTT ZAHN, ISAAC WACHHOLZ,
BRAEDEN SEXTON, ANDREW ROSS,
CODY OUDINOT, GERALD GAUDET,
SGT. WHITE, DOMINIC SCHROECKENTHALER,
SYDNEY THORSON, and SERGEANT SOSOKA,

                        Defendants.

OPINION and ORDER

23-cv-244-jdp

---

Plaintiff Randolph Wallace Boulden, proceeding without counsel, alleges that defendant Dane County Jail officials and Madison police officers beat him and strapped him into a chair tightly for two hours, causing him nerve damage in one of his arms. I granted Boulden leave to proceed on claims under the Fourth Amendment to the United States Constitution.

Both the county and city defendants move for summary judgment on Boulden's claims. Dkt. 53 and Dkt. 61. Boulden did not respond to either motion. Under this court's summary judgment procedures, that means that I will consider defendants' proposed findings to be undisputed. *See* attachments to preliminary pretrial conference order, Dkt. 42, at 8 ("If a party fails to respond to a fact proposed by the opposing party, the court will accept the opposing party's proposed fact as undisputed."). Based on the undisputed facts and video footage of the incident, I will grant summary judgment to defendants and dismiss the case.

UNDISPUTED FACTS

I draw the following facts from defendants' proposed findings of fact and video footage of the incident between Boulden and defendants, Dkt. 57-1 (placeholder docket entry for surveillance video; there is no accompanying audio).

Defendants Dominic Schroeckenthaler, Sydney Thorson, and Gregory Sosoka worked for the city of Madison Police Department: Schroeckenthaler and Thorson were police officers and Sosoka was a sergeant. On the evening of February 3, 2023, Schroeckenthaler, Thorson, and Sosoka responded to a report that a bus passenger was banging on the inside of a bus window and screaming at the driver. The driver identified plaintiff Randolph Wallace Boulden as the man who had caused the disturbance.

By the time the officers arrived, Boulden had walked across the street away from the bus. The officers stopped and frisked Boulden. Boulden identified himself by name and denied that he had caused a disturbance. The officers believed that Boulden was intoxicated because he slurred his speech and smelled of intoxicants. Boulden initially stated that he had not anything to drink but then said that he had had "a couple drinks." Dkt. 58, ¶ 11. When Boulden searched Boulden's name on their computer databases, they saw that Boulden had a "no drinking" bail condition. *Id.*, ¶ 12. The officers arrested Boulden, believing that there was probable cause for bail jumping and for disorderly conduct.

Defendants Schroeckenthaler and Thorson drove Boulden to the Dane County Jail. They brought him to the booking area and began to fill out booking paperwork. Boulden sat on a chair, handcuffed behind his back. Defendant Dane County Deputies Scott Zahn and Isaac Wachholz attempted to administer a preliminary breath test, but Boulden refused; he

2

instead argued about the legality of his arrest. Boulden also refused most of the deputies' standard booking questions.

Defendant Wachholz then attempted to fingerprint Boulden using a portable fingerprinting device. Boulden resisted the fingerprinting by clenching his fists and by pulling his hands away. Boulden then attempted to stand up from the chair. Dkt. 57-1, at 1:54. To keep Boulden in the chair, Wachholz pushed on Boulden's wrists and Zahn walked over and placed his hands on Boulden's right shoulder; Boulden sat back down. *Id.* at 1:56. Wachholz again tried to fingerprint Boulden. Boulden continued to struggle against the deputies, eventually attempting to bite Zahn. *Id.* at 2:30.

Defendant Schroeckenthaler saw this and shouted, "He's trying to bite you." Dkt. 58, ¶ 39. Schroeckenthaler and Thorson came over to assist the deputies. Another deputy arrived to help (it's unclear which defendant this was). After a struggle, defendants wrestled Boulden to the floor. Dkt. 57-1, at 2:46. Boulden continued to resist. Four more deputies arrived and assisted in holding Boulden down for about two minutes. During this time, defendant Deputy Braeden Sexton grabbed Boulden's head to prevent him from biting the officers. Deputies placed a spit-prevention hood over Boulden's head. Officers Schroeckenthaler and Thorson backed away from Boulden to let the deputies restrain him.

The deputies then lifted Boulden and placed him into a restraint chair. *Id.* at 4:33. For the next few minutes, deputies strapped Boulden's arms and legs to the chair. Within a few minutes, a nurse checked the restraints; from the video it appears that she may have had the deputies readjust the wrist restraints. *Id.* at 8:08–8:31. Deputies then wheeled Boulden to a segregation cell.

I will discuss additional facts as they are relevant to the analysis.

3

ANALYSIS

Boulden is proceeding on claims that defendants violated his Fourth Amendment rights by beating him and then strapping him into a chair tightly for a prolonged period of time, causing him nerve damage.

Under the Fourth Amendment, an officer's use of force is excessive if the officer uses greater force than was reasonably necessary. *Becker v. Elfreich*, 821 F.3d 920, 925 (7th Cir. 2016); *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009). The standard is an objective one, viewed from the perspective of a reasonable officer in light of the totality of the circumstances known to the officer, without regard to the officer's intent or his subjective beliefs. *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Williams v. Indiana State Police Dept.*, 797 F.3d 468, 472–73 (7th Cir. 2015). In assessing reasonableness, relevant factors include the seriousness and immediacy of any threat posed by the plaintiff and the extent of the plaintiff's resistance or interference with an officer's duties. *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

Boulden alleges that defendant Wachholz harmed him by bending his fingers and wrists in the fingerprinting process and that the Dane County and city of Madison defendants joined together to beat him by "attacking and hitting" him and slamming his head to the floor. Dkt. 4, at 5. But defendants' undisputed facts, coupled with video footage of the incident, show that defendants did not use excessive force. To start with, defendants had a legitimate interest in completing the booking process. *See, e.g., Maryland v. King,* 569 U.S. 435, 458 (2013)

4

("[C]ourts had no trouble determining that fingerprinting was a natural part of the administrative steps incident to arrest." (internal quotation and citation omitted)). There is no evidence that defendant Wachholz unreasonably bent Boulden's fingers or wrists to obtain fingerprints. To the contrary, Wachholz states that Boulden frustrated his attempts to take fingerprints by clenching his fists and by pulling his hands away.

Then, defendants reasonably prevented Boulden from leaving his chair and standing up; nothing in the video suggests that they used excessive force in keeping him in the chair. Boulden alleges that he didn't try to bite any defendant. But the video footage confirms defendants' account that Boulden tried to bite defendant Zahn, which led to the officers pushing Boulden to the floor and placing a spit mask on him. This was an appropriate course of action given Boulden's disruptive and violent behavior. *Cf. Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012) ("Custodians must be able to handle, sometimes manhandle, their charges, if a building crammed with disgruntled people who disdain authority . . . is to be manageable."). Nothing in the video footage suggests that defendants used gratuitous force in subduing Boulden, such as by hitting him or slamming his head to the floor, as he alleged.

That leaves Boulden's allegation that defendants harmed him by tightly restraining him in the restraint chair for two hours. The video shows that within a few minutes of his placement in the restraint chair a nurse came to check on the restraints. It's unclear exactly what actions the nurse took, but the video shows a deputy adjusting something on the chair in the area of Boulden's wrists after the nurse speaks with him. Dkt. 57-1, at 8:08–8:31. There's a reasonable inference from this footage that the nurse had the deputies loosen the wrist restraints. Nonetheless, that footage isn't enough to stave off summary judgment on Boulden's Fourth Amendment claim about the restraints. The evidence shows, at most, that Boulden was tightly

5

restrained for only a few minutes and that defendants actively sought out the nurse to check the restraints. This doesn't support Boulden's allegation that he was left tightly restrained for two hours, nor does it otherwise show that defendants acted unreasonably in subduing Boulden.

Courts often observe that summary judgment requires the party with the burden of proof to "put up or shut up," pointing to evidence from which a reasonable jury could find in its favor of each element of its claim. *See, e.g., Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). Boulden didn't submit evidence supporting his claims, nor do defendants' proposed findings or the surveillance video footage show that defendants acted unreasonably. I will grant summary judgment to both sets of defendants and dismiss this case.

## ORDER

IT IS ORDERED that:

1. Defendants' motions for summary judgment, Dkt. 53 and Dkt. 61, are GRANTED.
2. The clerk of court is directed to enter judgment for defendants and close this case.

Entered July 2, 2025.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge